TREVOR R. PINCOCK
ISB #8918
MICHAEL G. SCHMIDT
ISB #6911
LUKINS & ANNIS, P.S.
601 E. Front Ave., Ste 303
Coeur d'Alene, ID 83814
Telephone: (208) 667-0517
Facsimile: (509) 747-2323

Attorneys for AgWest Farm Credit, PCA
and AgWest Farm Credit FLCA

Chapter 12

UNITED STATES BANKRUPTCY COURT
DISTRICT OF IDAHO

| | |
|---|---|
| In Re:<br><br>IDAHO LIVESTOCK ENTERPRISES INC.,<br><br>Debtor. | NO. 26-20374-NGH<br><br>Chapter 12<br><br>**SECOND STIPULATION FOR ADEQUATE PROTECTION AND INTERIMUSE OF CASH COLLATERAL** |

Counsel for Creditor AgWest Farm Credit, PCA ("PCA") and AgWest Farm Credit FLCA ("FLCA") and Idaho Livestock Enterprises, Inc. ("Debtor") hereby agree to this additional stipulation to the Debtor's use of PCA's cash collateral on the terms specified below (the "Second Stipulation") and in the proposed Order for Adequate Protection and Interim Use of Cash Collateral ("Proposed Order") attached as **Exhibit A**.

1. Debtor filed its petition for relief under Chapter 12 of the Bankruptcy Code on September 10, 2026 (the “Petition Date”).

2. PCA made two loans to the Debtor (the “PCA Loans”) and asserts that repayment of the PCA Loans is secured by liens against Debtor's machinery, equipment, fixtures, inventory, livestock, supplies used or produced in Debtor’s farming operation, and products thereof and related accounts, including the cash proceeds therefrom (“PCA Collateral”). FLCA made a loan to Debtor (the “FLCA Loan”) that is secured by a deed of trust granted by William Russell, the president and owner of Debtor.

3. Debtor filed an Emergency Motion for Interim and Final Authority to Use Cash Collateral [Doc 25] (the “Cash Collateral Motion”). PCA and FLCA filed an objection to the Motion [Doc 33] (the “Objection”).

4. To resolve the Objection PCA, FLCA, and Debtor entered into a Stipulation for Adequate Protection and Interim Use of Cash Collateral [Doc 38] (the “Stipulation”). The court approved the Stipulation and scheduled a final hearing on cash collateral for November 12, 2026 [Doc 40].

5. For various reasons, including the court’s schedule and the inability of the parties to inspect collateral prior to the scheduled final hearing, the parties have stipulated to Debtor’s continued use of cash collateral through January 25,

2027.After negotiation, PCA and FLCA have agreed to consent to the Debtor's use of PCA's Cash Collateral on an interim basis through January 25, 2027, subject to the terms, conditions, and protection provided herein (the "Second Stipulation").

6. PCA's secured lien position in the PCA Collateral shall continue post-petition in the PCA Collateral, to the extent of the amount of the cash collateral that is utilized to the date of the final hearing to use cash collateral. Debtor shall not use more than $79,000.00 of PCA Collateral or Cash Collateral during the Interim Relief Period (as defined below). The final cash collateral hearing shall occur on January 25, 2027. This affirmation and acknowledgement by the Debtor does not bind the U.S. Trustee, Chapter 12 Trustee, any creditor, or any other party in interest, all of whom reserve and retain all of their rights with respect to PCA's lien priority, if any.

7. All income generated from the PCA Collateral, without limitation, both pre-petition and post-petition, is and for all purposes shall be deemed to constitute "Cash Collateral" to the extent provided by Bankruptcy Code § 552(b), under Bankruptcy Code §§ 363(a) and (c)(2), and properly perfected under Bankruptcy Code § 546(b) and any other applicable law.

8. Debtor agrees to sequester all income generated from the operation of the Debtor's business and use of PCA's Collateral in a segregated bank account in

accordance with Bankruptcy Code § 363(c)(4) and shall deposit those funds into the approved Debtor In Possession ("DIP") account. This includes any proceeds from the sale of cattle that secures the Adequate Protection Payment (as defined below).

9. Debtor agrees, at all times during the pendency of this bankruptcy to keep all Cash Collateral, including all income generated from the operation of the Debtor's business and use of PCA's Collateral, whether previously or hereafter collected, and any and all other Cash Collateral that comes into the Debtor's possession, custody or control, together with all proceeds, products or profits thereof, separate and distinct from all other property of the Debtor and of the Debtor's bankruptcy estate.

10. Debtor agrees to establish a Cash Collateral trust account with a financial institution that is on the approved list of depositories maintained by the Office of the United States Trustee for the District of Idaho. The Debtor may use its debtor-in-possession account as the Cash Collateral trust account.

11. The Debtor agrees to deposit into the Cash Collateral trust account (i) all income in the possession, custody or control of the Debtor or its agents, employees, other representatives, together with all proceeds, products, profits

thereof, and (ii) all income, together with all proceeds, products or profits thereof, or thereafter collected by or on behalf of the Debtor.

12. For the period September 19, 2026 through January 25, 2027 (the "Interim Relief Period") the Debtor is authorized to use the income generated from the operation of the Debtor's business and up to $79,000.00 of the PCA Collateral solely for the purpose of funding ordinary and necessary costs of operating the Debtor's business and maintaining the PCA Collateral in accordance with the budget attached hereto at **Exhibit B**, which is incorporated herein by reference (the "Budget"), with a ten percent (10%) per line item variance. By entering into this Second Stipulation, PCA and FLCA are not agreeing to the amounts set forth in the Budget subsequent to the Interim Relief Period. The Budget contains a line item for feed of $3,150.00 per week. This is not an out of pocket expense, and is not an authorized expense, it reflects rather the depletion of the feed already on hand that is PCA's Collateral.

13. For the Debtor's interim use of Cash Collateral, PCA and FLCA are entitled to adequate protection as follows:

a. As additional security and in an effort to provide partial adequate protection for the liens and security interests of PCA in the PCA Collateral and the Cash Collateral, the Debtor hereby grants PCA

a continuing lien in and to all of the PCA Collateral and Cash Collateral, and proceeds generated by the business operations or other use of the PCA Collateral, received on or after the Petition date, paid on account of contracts or other agreements (written and/or oral) entered into by the Debtor prior to or after the commencement of its Chapter 12 case, as well as all accounts, chattel paper, general intangibles, inventory, hay, feed, livestock, equipment, and improvements that are purchased or generated from the use of Cash Collateral (the "Post-Petition Liens"), to the extent of the Cash Collateral that is used during the Interim Relief Period. These Post-Petition Liens expressly cover all of the same types of collateral as that PCA Collateral secured by PCA pre-petition.

b. A junior lien on that certain real property identified as 6493 E Trinity Ln, Athol ID 83801, and legally described as set forth in **Exhibit C** hereto (the "Real Property") to the extent of the Cash Collateral that is used during the Interim Relief Period. The owner of said Real Property, William Russell, will grant the lien to PCA in a form acceptable to PCA.

c. An adequate protection payment of $50,000.00 on or before December 31, 2026 (the "Adequate Protection Payment"). The Adequate Protection Payment shall be applied to the amounts owing on the PCA Loans and the FLCA Loan at AgWest's sole discretion and as set forth in the loan documents. The Debtor reserves the right to contest the reasonableness of the attorney's fees. The application of the payment shall also not create unwarranted late fees or other penalties that could have otherwise been avoided

d. Debtor, Trinity Holdings LLC, and Penny Davis agree to provide PCA written notice of the proposed terms of sale of any collateral, including but not limited to the sale of cattle, ten days prior to such sale. The sale price of the cattle shall be sufficient to create enough income to pay to PCA/FLCA the $50,000 adequate protection payment, if not PCA/FLCA shall have a right to object to the terms of such sale prior to any disposition of the collateral, and in the event of any objection the sale shall not proceed except by court order. Attached hereto as Exhibit Cis a copy of the contract between Penny Davis and Debtor regarding the feeding

and sale of cattle, which requires the sales check to be written to Debtor and Penny Davis to ensure payment is made to the Debtor for the feed provided.

e. To secure the Adequate Protection Payment the lien provided on William Russel's real property identified in section 12.b. shall also act as security for the $50,000 payment.

13. Except as otherwise ordered by the Court, no funds shall be deposited into the Cash Collateral trust account other than those deposited therein in accordance with a cash collateral order. Except as otherwise ordered by the Court, no funds shall be disbursed from the Cash Collateral trust account except for payments made in accordance with the terms of the Budget, including the applicable ten percent (10%) per line-item variance. All disbursements shall be made in strict compliance with the terms of this Second Stipulation and an order for interim use of cash collateral. The funds deposited in the Cash Collateral account, and all Cash Collateral generated shall not be disbursed or otherwise used for the payment of any other obligations not included in the Budget, incurred by or on behalf of the Debtor, without prior written authorization from PCA, and if material, upon further court order. Funds in the cash collateral account and any

other cash collateral shall not be used for the payment of the expenses incurred on behalf of any other party or entity other than the Debtor.

14. Debtor shall strictly account for all Cash Collateral, together with all proceeds, products, profits thereof that come into the Debtor's possession, custody, or control and shall furnish PCA with the reports on the same. The Debtor shall keep records that shall be of such character as will enable the PCA to determine at any time the status of all Cash Collateral, together with all proceeds, products, profits thereof. Upon reasonable request, the Debtor shall provide PCA and its counsel, agents, and employees with copies of all records and other payments in the possession, custody or control of the Debtor or its agents, pertaining to the use of Collateral, Cash Collateral, and all proceeds, products or profits thereof.

15. All agreements, security interests, and liens, including but not limited to the Post-Petition Liens, junior lien on the real property and the lien on cattle, contemplated by the Stipulation and this Second Stipulation are affected and perfected without further filing by PCA or compliance with state or federal law. PCA will not be required to file a deed of trust or financing statements or other documents in any jurisdiction or to take any other action in order to perfect the security interests in the liens granted to it under and pursuant to the Stipulation or this Second Stipulation. If PCA, in its full discretion, chooses to file or record such

financing statements or otherwise confirm perfection of such security interest in the liens, all such financing statements, assignments, or other similar documents shall promptly be executed, if necessary, by the Debtor upon the request of PCA.

16. The Debtor agrees to maintain, keep, and preserve the PCA Collateral in accordance with the terms and conditions of a cash collateral order and the underlying agreements with PCA.

17. Chapter 12 trustee Gary Rainsdon, PCA and FLCA representatives Dylan Hereford and Lane Holtrop and legal counsel Trevor Pincock, and/or PCA /FLCA appraisers shall have access, by providing five (5) business days' notice to the Debtor's attorney of record, to PCA's and FLCA's Collateral, including the real property and cattle, to review and evaluate the physical condition of PCA's and FLCA's Collateral, the real property, and the cattle.

18. PCA is under no obligation to grant the Debtor an extension of the use of Cash Collateral, or to enter into any further agreements with the Debtor. Any and all limitations set forth in a cash collateral order with respect to PCA's and FLCA's rights with regard to a default by the Debtor under this Second Stipulation or a cash collateral order are not to be construed as a waiver of any rights otherwise held by PCA or FLCA, including, but not limited to, rights held under Bankruptcy Code §§ 507, 362, 363, and 364. Moreover, regardless of the foregoing

but subject to the Debtor's protection under the Bankruptcy Code, nothing contained herein shall be deemed to limit, restrict or impair (1) the right of PCA or FLCA to pursue objections to the Debtor's proposed plan; (2) the right of PCA or FLCA to institute any action or proceeding against the Debtor or the Estate; (3) the validity of the indebtedness owed by the Debtor to PCA and FLCA as set forth in the PCA Claims and FLCA Claims; or (4) PCA's and FLCA's liens.

DATED this 5th day of November, 2026.

LUKINS & ANNIS, P.S.

By /s/ Trevor R Pincock
TREVOR R. PINCOCK
MICHAEL G. SCHMIDT
Attorneys for AgWest Farm Credit, PCA and AgWest Farm Credit, FLCA

FOLEY FREEMAN

By /s/ Patrick J. Geile
PATRICK J. GEILE
Attorneys for Debtor

/s/ Gary Rainsdon
GARY RAINSDON
Chapter 12 Trustee

________________________
William Russell Individually

________________________
William Russell for Debtor

________________________
William Russell for Trinity Holdings

Attorneys for AgWest Farm Credit,
PCA and AgWest Farm Credit,
FLCA
FOLEY FREEMAN

By____________________
PATRICK J. GEILE
Attorneys for Debtor

________________
Gary Rainsdon
Chapter 12 Trustee

William Russell Individually

William Russell for Debtor

William Russell for Trinity
Holdings

# EXHIBIT A

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF IDAHO**

| | |
|---|---|
| **In re:**<br><br>**IDAHO LIVESTOCK ENTERPRISES INC.,**<br><br>**Debtor.** | **Case No. 26-20374-NGH**<br><br>**Chapter 12** |

**ORDER GRANTING DEBTOR'S EMERGENCY AND CONTINUING MOTION FOR USE OF CASH COLLATERAL AND ADEQUATE PROTECTION PURSUANT TO SECOND STIPULATION AND TO RESCHEDULE FINAL HEARING**

THIS MATTER came before the Court for an interim hearing on the Debtor's Emergency and Continuing Motion for Authorization to Use Cash Collateral (Dkt. No. 25) (the "Cash Collateral Motion") on October 14, 2026.

Debtor and Creditors AgWest Farm Credit PCA ("PCA") and AgWest Farm Credit FLCA ("FLCA") previously stipulated to use of cash collateral and adequate protection (Dkt. No. 38) and the Court entered an order approving the stipulation and setting a final hearing (Dkt. No. 40).

Pursuant to a Second Stipulation for Adequate Protection and Interim Use of Cash Collateral (Dkt. No. ____) ("Second Stipulation"), the Debtor, PCA, and FLCA have agreed to Debtor's continued use of cash collateral and adequate protection to PCA and FLCA through a final hearing on January 25, 2027.

Based on the Second Stipulation (Dkt. No.__), and good cause appearing, the Court hereby ORDERS that the Debtor is authorized to use cash collateral and PCA and FLCA are granted the adequate protection as set forth in the Second Stipulation.

The Court further sets the final hearing on the Cash Collateral Motion for **25th day of January 2027 at the hour of 9:00 a.m. Pacific Time** or as soon thereafter as counsel can be heard before the Honorable Noah G. Hillen, in the courtroom of the above-entitled court located at 6450 North Mineral Drive Coeur d'Alene ID 83815 (the "Final Hearing"). Any opposition to the granting of relief on a final basis shall be filed and served by January 18, 2027. The Debtor may file a reply to any opposition or present its reply at the Final Hearing.

*// end of text //*

DATED: November ___, 2026

______________________________
NOAH G. HILLEN
Chief U.S. Bankruptcy Judge

***APPROVED TO FORM:***

*/s/ Patrick Geile*__
Patrick Geile, on behalf of Debtor Idaho Livestock Enterprises, Inc.

*/s/ Trevor Pincock*__
Trevor Pincock, on behalf of AgWest PCA and AgWest FLCA

*/s/ Gary Rainsdon*__
Gary Rainsdon , the appointed Chapter 12 Trustee

# EXHIBIT B

# Feedlot Operating Budget



September 19, 2026 - January 31, 2027 | Small Feedlot Debtor | All amounts in dollars

| Account / Description | 09/19/2026 | 09/26/2026 | 10/03/2026 | 10/10/2026 | 10/17/2026 | 10/24/2026 | 10/31/2026 | 11/07/2026 |
|---|---|---|---|---|---|---|---|---|
| **Ordinary Income/Expense** | | | | | | | | |
| **Income** | | | | | | | | |
| 43100 - Custom Hire Income | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 |
| 43700 - Sales - Other | - | - | - | - | - | - | - | - |
| 44100 - Fuel Tax Credits and Other Inc. | - | - | - | - | - | - | - | - |
| 45500 - Livestock Sales | - | - | - | - | - | - | - | - |
| **Total Income** | **1,000.00** | **1,000.00** | **1,000.00** | **1,000.00** | **1,000.00** | **1,000.00** | **1,000.00** | **1,000.00** |
| **Cost of Goods Sold** | | | | | | | | |
| 50100 - Items Purchased for Resale | - | - | - | - | - | - | - | - |
| 50125 - Feed/Grain | 3,150.00 | 3,150.00 | 3,150.00 | 3,150.00 | 3,150.00 | 3,150.00 | 3,150.00 | 3,150.00 |
| 50150 - Hay | - | - | - | - | - | - | - | - |
| 50200 - Livestock | - | - | - | - | - | - | - | - |
| 50300 - Medicated Feed Supplements | 781.00 | 781.00 | 781.00 | 781.00 | 781.00 | 781.00 | 781.00 | 781.00 |
| **Total COGS** | **3,931.00** | **3,931.00** | **3,931.00** | **3,931.00** | **3,931.00** | **3,931.00** | **3,931.00** | **3,931.00** |
| **Gross Profit** | **(2,931.00)** | **(2,931.00)** | **(2,931.00)** | **(2,931.00)** | **(2,931.00)** | **(2,931.00)** | **(2,931.00)** | **(2,931.00)** |
| **Expense** | | | | | | | | |
| 60000 - Advertising and Promotion | - | 450.00 | - | - | - | 450.00 | - | - |
| 60400 - Bank Service Charges | 8.00 | - | 20.00 | - | - | - | 20.00 | - |
| 63200 - Gasoline, Fuel and Oil | - | - | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 |
| Maintenance | - | - | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 |
| Insurance | - | - | - | 2,100.00 | - | - | - | - |
| 63400 - Interest Expense | - | - | - | - | - | - | - | - |
| 64300 - Meals and Entertainment | - | - | - | - | - | - | - | - |
| 66700 - Professional Fees | - | - | - | - | - | - | - | - |
| 67950 - Supplies | - | - | - | - | - | - | - | - |
| 68000 - Taxes - Property | - | - | - | - | - | - | - | - |
| 68050 - Taxes - Other | - | - | - | - | - | - | - | - |
| 68800 - Veterinary, Breeding, Medicine | - | - | - | - | - | - | - | - |
| AgWest annual payment | - | - | - | - | - | - | - | - |
| **Total Expense** | **8.00** | **450.00** | **720.00** | **2,800.00** | **700.00** | **1,150.00** | **720.00** | **700.00** |
| **Net Ordinary Income** | **992.00** | **550.00** | **280.00** | **(1,800.00)** | **300.00** | **(150.00)** | **280.00** | **300.00** |

# Feedlot Operating Budget



September 19, 2026 - January 31, 2027 | Small Feedlot Debtor | All amounts in dollars

| Account / Description | 11/14/2026 | 11/21/2026 | 11/28/2026 | 12/05/2026 | 12/12/2026 | 12/19/2026 | 12/26/2026 | 01/02/2027 |
|---|---|---|---|---|---|---|---|---|
| **Ordinary Income/Expense** | | | | | | | | |
| **Income** | | | | | | | | |
| 43100 - Custom Hire Income | 1,000.00 | 1,000.00 | 1,000.00 | - | - | 50,000.00 | - | 3,675.00 |
| 43700 - Sales - Other | - | - | - | - | - | - | - | - |
| 44100 - Fuel Tax Credits and Other Inc. | - | - | - | - | - | - | - | - |
| 45500 - Livestock Sales | - | - | - | - | - | - | - | - |
| **Total Income** | **1,000.00** | **1,000.00** | **1,000.00** | **-** | **-** | **50,000.00** | **-** | **3,675.00** |
| **Cost of Goods Sold** | | | | | | | | |
| 50100 - Items Purchased for Resale | - | - | - | - | - | - | - | - |
| 50125 - Feed/Grain | 3,150.00 | 3,150.00 | 3,150.00 | 3,150.00 | 3,150.00 | 3,150.00 | 3,150.00 | 3,150.00 |
| 50150 - Hay | - | - | - | - | - | - | - | - |
| 50200 - Livestock | - | - | - | - | - | - | - | - |
| 50300 - Medicated Feed Supplements | 781.00 | 781.00 | 781.00 | 781.00 | 781.00 | 781.00 | 781.00 | 781.00 |
| **Total COGS** | **3,931.00** | **3,931.00** | **3,931.00** | **3,931.00** | **3,931.00** | **3,931.00** | **3,931.00** | **3,931.00** |
| **Gross Profit** | **(2,931.00)** | **(2,931.00)** | **(2,931.00)** | **(3,931.00)** | **(3,931.00)** | **46,069.00** | **(3,931.00)** | **(256.00)** |
| **Expense** | | | | | | | | |
| 60000 - Advertising and Promotion | - | 450.00 | - | - | - | 450.00 | - | - |
| 60400 - Bank Service Charges | - | - | 20.00 | - | - | - | 20.00 | - |
| 63200 - Gasoline, Fuel and Oil | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 |
| Maintenance | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 |
| Insurance | - | - | - | - | - | - | - | - |
| 63400 - Interest Expense | - | - | - | - | - | - | - | - |
| 64300 - Meals and Entertainment | - | - | - | - | - | - | - | - |
| 66700 - Professional Fees | - | - | - | - | - | - | - | - |
| 67950 - Supplies | - | - | - | - | - | - | - | - |
| 68000 - Taxes - Property | - | - | - | - | - | - | - | - |
| 68050 - Taxes - Other | - | - | - | - | - | - | - | - |
| 68800 - Veterinary, Breeding, Medicine | - | - | - | - | - | - | - | - |
| AgWest annual payment | - | - | - | - | - | - | 50,000.00 | - |
| **Total Expense** | **700.00** | **1,150.00** | **720.00** | **700.00** | **700.00** | **1,150.00** | **50,720.00** | **700.00** |
| **Net Ordinary Income** | **300.00** | **(150.00)** | **280.00** | **(700.00)** | **(700.00)** | **48,850.00** | **(50,720.00)** | **2,975.00** |

# Feedlot Operating Budget



September 19, 2026 - January 31, 2027 | Small Feedlot Debtor | All amounts in dollars

| Account / Description | 01/09/2027 | 01/16/2027 | 01/23/2027 | 01/30/2027 | 01/31/2027 | TOTAL FULL PERIOD |
|---|---|---|---|---|---|---|
| **Ordinary Income/Expense** | | | | | | |
| **Income** | | | | | | |
| 43100 - Custom Hire Income | 3,675.00 | 3,675.00 | 3,675.00 | 3,675.00 | 525.00 | 79,900.00 |
| 43700 - Sales - Other | - | - | - | - | - | - |
| 44100 - Fuel Tax Credits and Other Inc. | - | - | - | - | - | - |
| 45500 - Livestock Sales | - | - | - | - | - | - |
| **Total Income** | **3,675.00** | **3,675.00** | **3,675.00** | **3,675.00** | **525.00** | **79,900.00** |
| **Cost of Goods Sold** | | | | | | |
| 50100 - Items Purchased for Resale | - | - | - | - | - | - |
| 50125 - Feed/Grain | 3,150.00 | 3,150.00 | 3,150.00 | 3,150.00 | 450.00 | 63,450.00 |
| 50150 - Hay | - | - | - | - | - | - |
| 50200 - Livestock | - | - | - | - | - | - |
| 50300 - Medicated Feed Supplements | 781.00 | 8,781.00 | 781.00 | 781.00 | 111.57 | 23,731.57 |
| **Total COGS** | **3,931.00** | **11,931.00** | **3,931.00** | **3,931.00** | **561.57** | **87,181.57** |
| **Gross Profit** | **(256.00)** | **(8,256.00)** | **(256.00)** | **(256.00)** | **(36.57)** | **(7,281.57)** |
| **Expense** | | | | | | |
| 60000 - Advertising and Promotion | - | 450.00 | - | - | - | 2,250.00 |
| 60400 - Bank Service Charges | - | - | 20.00 | - | - | 108.00 |
| 63200 - Gasoline, Fuel and Oil | 400.00 | 400.00 | 400.00 | 400.00 | 57.14 | 7,257.14 |
| Maintenance | 300.00 | 300.00 | 300.00 | 300.00 | 42.86 | 5,442.86 |
| Insurance | - | - | - | - | - | 2,100.00 |
| 63400 - Interest Expense | - | - | - | - | - | - |
| 64300 - Meals and Entertainment | - | - | - | - | - | - |
| 66700 - Professional Fees | - | - | - | - | - | - |
| 67950 - Supplies | - | - | - | - | - | - |
| 68000 - Taxes - Property | - | - | - | - | - | - |
| 68050 - Taxes - Other | - | - | - | - | - | - |
| 68800 - Veterinary, Breeding, Medicine | - | - | - | - | - | - |
| AgWest annual payment | - | - | - | - | - | 50,000.00 |
| **Total Expense** | **700.00** | **1,150.00** | **720.00** | **700.00** | **100.00** | **67,158.00** |
| **Net Ordinary Income** | **2,975.00** | **(5,475.00)** | **2,955.00** | **2,975.00** | **425.00** | **4,742.00** |

# EXHIBIT C

[redacted]

The Northwest quarter of the Southwest quarter of the Northwest quarter, Section 10, Township 53 North, Range 3 West, Boise Meridian, Kootenai County, Idaho.

EXCEPTING THEREFROM a parcel of land in the North half of the Southwest quarter of the Northwest quarter of Section 10, Township 53 North, Range 3 West, Boise Meridian, Kootenai County, Idaho, described as follows:

COMMENCING at the West quarter corner of said Section 10, from which the Northwest corner of said Section 10 bears North 00° 41' 12" East, 2,694.24 feet;

Thence North 00° 41' 12" East, along the western boundary of the Northwest quarter of said Section 10, 673.56 feet to the Southwest corner of said North half of the Southwest quarter of the Northwest quarter;

Thence North 89° 27' 18" East, along the southern boundary of said North half of the Southwest quarter of the Northwest quarter, 244.38 feet to a point;

Thence North 00° 32' 42" West, leaving said southern boundary, 30.00 feet to a point.

Said point being of the northern boundary of a 30.00 foot utility and road right of way easement as recorded in Warranty Deed Instrument No. 1203381, records of Kootenai County, Idaho.

Said point being the TRUE POINT OF BEGINNING for said well lot;

Thence North 00° 32' 42" West, leaving said northern boundary, 100.00 feet;

Thence North 89° 27' 18" East, 100.00 feet;

Thence South 00° 32' 42" East, 100.00 feet to a point.

Said point being on said northern boundary of a 30.00 foot utility and road easement;

Thence South 89° 27' 18" West, along said northern boundary, 100.00 feet to the POINT OF BEGINNING.